UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

JERMAINE STEVENSON,

                    Plaintiff,                          Case No. 2:22-cv-217

v.                                                      Honorable Robert J. Jonker

UNKNOWN GREEN et al.,

                    Defendants.

_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff

has been granted leave to proceed *in forma pauperis*. (ECF No. 4.) Under the Prison Litigation

Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss

any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state

a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from

such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's

*pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept

Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v.

Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's

complaint for failure to state a claim.

## Discussion

### I.      Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC)

at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan. The

events about which he complains occurred at that facility. Plaintiff sues Warden Connie Horton, Grievance Coordinator M. McLean, Supervising Lieutenants Unknown Trotter and Unknown Bigger, Supervising Sergeant G. Blemke, and Corrections Officers Unknown Green and Unknown Snyder.

Plaintiff alleges that he is "a qualified individual with a mental health disability," and that during all relevant times, he was "in voluntary outpatient treatment in the Corrections Mental Health Program (CMHP)." (ECF No. 1, PageID.5.) Plaintiff states that he has a long history of outpatient mental health therapy and that he takes prescription medication for depression. (*Id.*)

In January of 2021, Plaintiff submitted a grievance "on various facility staff members," alleging violations of his Eighth Amendment rights—specifically, deliberate indifference to his medical needs. (*Id.*, PageID.6.)

On February 3, 2021, Plaintiff left the chow hall after breakfast to return to his housing unit. (*Id.*) Immediately after Plaintiff left the chow hall, Defendant Green left the chow hall and directed Plaintiff to accompany him back inside. (*Id.*) Plaintiff did so, and once inside, Defendant Green asked, "Do you have anything on your person?" (*Id.*) Plaintiff responded that he did not. (*Id.*) Plaintiff then "proceeded to spread his legs, unzip his coat[,] and lift his arms to assume the traditional 'pat-down' frisk position voluntarily." (*Id.*) "Plaintiff's body was thoroughly frisked by an unnamed officer," and his coat was removed and searched by an officer. (*Id.*) No contraband was found. (*Id.*, PageID.7.)

The supervising sergeant directed Plaintiff to return to his housing unit, but Defendant Green instructed Plaintiff to remain where he was. (*Id.*) Defendant Green told the sergeant "that it looked like Plaintiff attempted to 'ditch something' outside." (*Id.*) Plaintiff told the sergeant that was not true. (*Id.*) The sergeant responded, "It doesn't matter, [Plaintiff] doesn't have any

contraband on him, so he can go." (*Id.*) As Plaintiff turned to leave, Defendant Green said, "No, I want to strip search him." (*Id.*) The sergeant said, "Go ahead." (*Id.*)

Defendant Green escorted Plaintiff to the annex building, where he informed Defendant Trotter that he was going to strip search Plaintiff. (*Id.*) Defendant Green told Defendant Trotter, "You know what this is about." (*Id.*) Plaintiff claims this was a reference to the grievance Plaintiff had submitted about "deprivation of his prescribed anti-depressants." (*Id.*, PageID.8.) Defendant Trotter "nodded his head in approval and made no attempt to accompany [D]efendant Green for supervision." (*Id.*)

Defendant Green took Plaintiff "into the 'Deputy suite' instead of the designated non-routine strip search room." (*Id.*) He did not turn on the lights inside that room. (*Id.*) Plaintiff said, "This isn't where I was strip searched last time I was brought up here a few days ago." (*Id.*) Defendant Green replied, "I don't give a f*** about what they did last time." (*Id.*) Defendant Green directed Plaintiff "to strip naked in a public access 'Deputy Suite' lobby area." (*Id.*) He then directed Plaintiff to remove all clothing, open his mouth, allow examination of his ears, "lift his arms to expose his armpits, bend over and spread his buttocks to expose his anus to the frisking officer, and lift his testicles to expose the area" behind them. (*Id.*) During the strip search, Resident Unit Manager Lacrosse "walked through the lobby area to gain access to his office." (*Id.*) Defendant Snyder also "walk[ed] into the lobby area, laughed, and then left the area." (*Id.*, PageID.9.) Defendant Green told Plaintiff that he did not "even know what true depression is yet," and that "[officers could] do this every day." (*Id.*) After the search, Defendant Green told Plaintiff to get dressed as he made "numerous copies of Plaintiff's identification card" using the copy machine. (*Id.*)

Plaintiff submitted a Step I grievance "alleging a PREA complaint" against Defendant Green on February 4, 2021. (*Id.*) Defendant McLean received the grievance on February 10, 2021, but failed to forward it to URF's PREA coordinator. (*Id.*) While conducting research, Plaintiff "discovered that there exists a separate process for which administration must process PREA claims which are filed through the institutional grievance process." (*Id.*, PageID.10.) After Plaintiff became aware of that process, he filed a grievance against Defendants Horton, Blemke, Bigger, and, McLean "for their first-hand knowledge of the unconstitutional acts committed by [D]efendant Green and their personal involvement in the review process of Plaintiff's complaint. (*Id.*)

Defendant McLean processed the PREA grievance through the regular grievance process "in violation of MDOC policies and customs." (*Id.*) Defendant Blemke interviewed Plaintiff regarding his complaint. (*Id.*) Defendant Blemke asked Plaintiff to sign off his grievance, and Plaintiff refused. (*Id.*) According to Plaintiff, Defendant Blemke failed to forward the PREA complaint to the PREA coordinator. (*Id.*) Defendant Bigger "conducted an unauthorized review of the PREA grievance" and also failed to forward it to the PREA coordinator. (*Id.*) Plaintiff appealed to Defendant Horton, who failed to report the PREA grievance and denied Plaintiff's appeal, stating that there "was no violation of policy." (*Id.*, PageID.11.)

Based on the foregoing, Plaintiff asserts violations of his First Amendment right to be free from retaliation, Fourth Amendment rights, Eighth Amendment rights, and Fourteenth Amendment equal protection rights. (*Id.*, PageID.12–15.) Given Plaintiff's reference to being a qualified individual with a disability, the Court also construes Plaintiff's complaint to assert claims against Defendants pursuant to the Americans with Disabilities Act (ADA). Additionally, the Court construes Plaintiff's complaint to assert claims against Defendants McLean, Horton,

Blemke, and Bigger premised upon their handling of Plaintiff's grievance and PREA complaint, as well as violations of MDOC policy against all Defendants. Plaintiff seeks compensatory and punitive damages. (*Id.*, PageID.17.)

## II.   Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

### A.   ADA Claims

The Court has construed Plaintiff's complaint to assert ADA claims against all Defendants premised upon his allegation that he is a qualified individual with a disability. Title II of the ADA

provides, in pertinent part, that no qualified individual with a disability shall, because of that disability, "be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Mingus v. Butler*, 591 F.3d 474, 481–82 (6th Cir. 2010) (citing 42 U.S.C. § 12132). The Supreme Court has held that Title II of the ADA applies to state prisons and inmates. *See Penn Dep't of Corr v. Yeskey*, 524 U.S. 206, 210–12 (1998) (noting that the phrase "services, programs, or activities" in § 12132 includes recreational, medical, educational, and vocational prison programs).

Plaintiff, however, has sued Defendants in their individual capacities only. (ECF No. 1, PageID.3–5.) The proper defendant under a Title II claim, however, is the public entity or an official acting in his official capacity. *Carten v. Kent State Univ.*, 282 F.3d 391, 396–97 (6th Cir. 2002). "Title II of the ADA does not . . . provide for suit against a public official acting in his individual capacity." *Everson v. Leis*, 556 F.3d 484, 501 n.7 (6th Cir. 2009). The Court, therefore, will dismiss any ADA claims that Plaintiff asserts against Defendants.

## B.  Section 1983 Claims

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

1.      **Constitutional Claims Against Defendants McLean, Horton, Blemke, and Bigger**

Plaintiff claims that Defendants McLean, Horton, Blemke, and Bigger violated his Fourth and Eighth Amendment rights by failing to act upon his grievance concerning Defendant Green and by failing to properly process his PREA complaint.

As an initial matter, it appears that Plaintiff has named Defendants McLean, Horton, Blemke, and Bigger because of their respective supervisory positions at URF. Government officials, however, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs*., 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee,* 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that

7

the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300, citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976), *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

Here, Plaintiff fails to allege any facts to support an inference that Defendants McLean, Horton, Blemke, and Bigger encouraged or condoned the conduct of Defendant Green, or authorized, approved, or knowingly acquiesced in that conduct. Instead, Plaintiff alleges only that they denied his grievance and improperly processed his PREA complaint. As noted above, denying a grievance and failing to act upon that information is not enough to impose § 1983 liability. *See Shehee*, 199 F.3d at 300. Plaintiff, therefore, fails to set forth supervisory liability claims against Defendants McLean, Horton, Blemke, and Bigger.

Plaintiff also takes issue with how Defendants McLean, Horton, Blemke, and Bigger handled his grievance and PREA complaint. With respect to Plaintiff's claims regarding the handling of his grievance, he has no due process right to file a grievance. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569–70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S.

238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendants McLean, Horton, Blemke, and Bigger's conduct did not deprive him of due process.

Moreover, Plaintiff's First Amendment right to petition the government was not violated by these Defendants' conduct. The First Amendment "right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *see also Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984) (holding the right to petition protects only the right to address government; the government may refuse to listen or respond).

Finally, these Defendants' actions have not barred Plaintiff from seeking a remedy for his complaints. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). "A prisoner's constitutional right to assert grievances typically is not violated when prison officials prohibit only 'one of several ways in which inmates may voice their complaints to, and seek relief, from prison officials' while leaving a formal grievance procedure intact." *Griffin v. Berghuis*, 563 F. App'x 411, 415–16 (6th Cir. 2014) (citing *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n.6 (1977)). Indeed, Plaintiff's ability to seek redress is underscored by his *pro se* invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982). Even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances, and he therefore cannot demonstrate the actual injury required for an access-to-the-courts claim. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430 U.S. 817, 821–24 (1977). The exhaustion requirement only mandates exhaustion of

*available* administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 578 U.S. 632, 640–44 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470–71 (6th Cir. 2001). In light of the foregoing, Plaintiff has failed to state a cognizable claim against Defendants McLean, Horton, Blemke, and Bigger premised upon their handling of Plaintiff's grievances.

Finally, Plaintiff cannot maintain a claim against Defendants McLean, Horton, Blemke, and Bigger premised upon their alleged failure to comply with PREA guidelines. Plaintiff "has no independent cause of action for any [individual's] failure to comply with the [PREA]." *Beeman v. Heyns*, No. 1:16-cv-27, 2016 WL 1316771, at *12 n.4 (W.D. Mich. Apr. 5, 2016) ("Although not addressed in the Sixth Circuit, district courts have found that the PREA does not create a private cause of action which can be brought by an individual plaintiff." (quoting *Montgomery v. Harper*, No. 5:14-cv-P38R, 2014 WL 4104163, at *2 (W.D. Ky. Aug. 19, 2014))); *see also McCloud v. Prack*, 55 F. Supp. 3d 478, 482 n.2 (W.D.N.Y. 2014) ("[N]othing in the statute suggests that PREA intended to establish a private cause of action for allegations of prison rape, and every court to address the issue has determined that PREA cannot support such a cause of action by an inmate." (quoting *Amaker v. Fischer*, No. 10-cv-977, 2014 WL 4772202, at *14 (W.D.N.Y. Sept. 24, 2014))); *Barhite v. Berghuis*, No. 1:14-cv-670, 2014 WL 4627166, at *5 (W.D. Mich. Sept. 15, 2014) ("Plaintiff's request is predicated on the assumption that the PREA provides him a cause of action for Defendants' alleged sexual assaults. It does not.").

In sum, Plaintiff fails to set forth a cognizable constitutional claim against Defendants McLean, Horton, Blemke, and Bigger. The Court, therefore, will dismiss those individuals as Defendants.

### 2.     Constitutional Claims Against Defendant Green

#### a.     First Amendment Retaliation Claim

Plaintiff first asserts a First Amendment retaliation claim against Defendant Green. As set forth above, Plaintiff alleges that when Defendant Green escorted him to the annex for a strip search, Defendant Green told Defendant Trotter "that he was going to strip search Plaintiff and then stated, 'You know what this is about.'" (ECF No. 1, PageID.7.) Plaintiff contends that Defendant Green made that statement "in reference to a grievance Plaintiff wrote on [D]efendant Green's coworkers for deprivation of his prescribed anti-depressants." (*Id.*, PageID.8.) Plaintiff also references his prior civil rights action. (*Id.*)

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of

11

retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (discussing that in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial" (internal quotation marks omitted)); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims [that will survive § 1915A screening]." (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998))).

Although Plaintiff engaged in protected conduct by filing a grievance, *see Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000), as well as by filing a prior civil rights action, *see Bell v. Johnson*, 308 F.3d 594, 607 (6th Cir. 2002), he merely alleges that ultimate fact of retaliation with respect to Defendant Green. Although Plaintiff has construed Defendant Green's statement of "you know what this is about" to be in reference to Plaintiff's grievance and his prior civil rights action, filed in 2021, Plaintiff alleges no *facts* to support that inference. That is, Plaintiff believed that Defendant Green's statement was in reference to some prior grievance that Plaintiff filed at an unspecified time. However, besides Plaintiff's apparent belief about the meaning of this statement, he alleges no facts and provides no other context that would support his belief. Moreover, although it appears that the filing of the grievance and civil rights complaint preceded the search of Plaintiff's person, Plaintiff alleges no facts about when the grievance was filed. Simply because one event precedes another by some unspecified amount of time does not automatically show retaliation. *See Coleman v. Bowerman*, 474 F. App'x 435, 437 (6th Cir. 2012) (holding that temporal proximity to the filing

of a grievance is insufficient because any adverse action "would likely be in 'close temporal proximity' to one of [the plaintiff's] many grievances or grievance interviews"); *cf. Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004) (noting that "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive").

In sum, the complaint is devoid of facts from which the Court could plausibly infer that Defendant Green decided to strip search Plaintiff because of Plaintiff's grievance and/or civil rights suit against Defendant Green's coworkers. Any First Amendment retaliation claim falls far short of the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure. Accordingly, the Court will dismiss Plaintiff's First Amendment retaliation claim against Defendant Green.

### b.     Fourth Amendment

Plaintiff contends that Defendant Green violated his Fourth Amendment rights by conducting a strip search. Specifically, Plaintiff alleges that the strip search violated his Fourth Amendment rights because: (1) it was conducted after a pat-down revealed no contraband on Plaintiff's person and in his coat; (2) the strip search was conducted after the sergeant instructed Defendant Green to allow Plaintiff to return to his housing unit; and (3) the strip search was conducted "in a general socializing area which was accessed by bystanders that viewed Plaintiff in the nude." (ECF No. 1, PageID.12.)

Both the Supreme Court and the Sixth Circuit have recognized that, under the Fourth Amendment, prisoners and detainees may be subjected to strip searches and body-cavity searches without individualized suspicion. *See Florence v. Bd. of Chosen Freeholders*, 566 U.S. 318, 333–34 (2012) (rejecting the argument that correctional officials need reasonable suspicion to conduct visual body-cavity searches upon inmates at the time they are admitted to the general jail population); *Stoudemire v. Mich. Dep't of Corr.*, 705 F.3d 560, 575 (6th Cir. 2013) (noting that "suspicionless strip searches [are] permissible as a matter of constitutional law"); *see also Salem*

13

*v. Mich. Dep't of Corr.*, 643 F. App'x 526, 529 (6th Cir. 2016). Nevertheless, strip searches "may be unreasonable by virtue of the way in which [they are] conducted." *Williams v. City of Cleveland*, 771 F.3d 945, 952 (6th Cir. 2014) (citing *Stoudemire*, 705 F.3d at 574) (holding that searches must be conducted in a manner that is reasonably related to the jail's legitimate objectives and that allegations that female prisoners were forced to sit on a chair and spread their labia in unsanitary conditions and in full view of other prisoners were sufficient to state a claim for unreasonable search and seizure). In determining the reasonableness of a search, courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted. *Stoudemire*, 705 F.3d at 572 (citing *Bell v. Wolfish*, 441 U.S. 520, 559 (1979)).

"There is no question that strip searches may be unpleasant, humiliating, and embarrassing to prisoners, but not every psychological discomfort a prisoner endures amounts to a constitutional violation." *Calhoun v. DeTella*, 319 F.3d 936, 939 (6th Cir. 2003). The Sixth Circuit has recognized some limited circumstances in which a prison strip search may implicate the Fourth Amendment. *See, e.g.*, *Cornwell v. Dahlberg*, 963 F.2d 912, 916 (6th Cir. 1992) (recognizing the facial validity of a Fourth Amendment invasion-of-privacy claim where male prisoners were allegedly strip searched in the prison yard in the presence of other inmates and female officers); *Kent v. Johnson*, 821 F.2d 1220, 1226–27 (6th Cir. 1987) (holding that a Fourth Amendment challenge to a prison policy requiring male prisoners to expose their naked bodies to regular and continuous surveillance by female officers was facially valid). Here, Plaintiff's allegations do not suggest that any of those circumstances were present when Defendant Green strip searched him. The complaint does not suggest that Defendant Green routinely strip searched Plaintiff in a public area. Moreover, Plaintiff does not suggest that he was strip searched in view of other inmates.

14

Finally, although Plaintiff alleges that other staff members (Lacrosse and Snyder) saw the strip search, he specifically alleges that Defendant Snyder is male (ECF No. 1, PageID.3), and he provides no facts regarding Lacrosse's gender.

In sum, Plaintiff's allegations regarding the strip search are insufficient to rise to the level of a Fourth Amendment violation. The Court, therefore, will dismiss Plaintiff's Fourth Amendment claim against Defendant Green.

### c.      Eighth Amendment

Next, Plaintiff contends that Defendant Green violated his Eighth Amendment right "to be free from cruel and unusual punishment by referencing his intentions to make Plaintiff, a 'qualified individual with a disability,' suffer from more severe depression." (ECF No. 1, PageID.12.)

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*,

503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

Plaintiff's allegations are simply too conclusory to infer an Eighth Amendment violation by Defendant Green. Although Defendant Green's statement that Plaintiff did not know "what true depression is yet" was unprofessional, such verbal harassment does not constitute punishment within the meaning of the Eighth Amendment. *See Ivey*, 832 F.2d at 955. Moreover, allegations of verbal harassment do not rise to the level of unnecessary and wanton infliction of pain proscribed

by the Eighth Amendment. *See id.* The Court, therefore, will dismiss Plaintiff's Eighth Amendment claim against Defendant Green.[1]

### d.    Fourteenth Amendment

Plaintiff next alleges that Defendant Green violated his rights under the Fourteenth Amendment's Equal Protection Clause "by discriminating against Plaintiff, a 'qualified individual with a disability,' and targeting Plaintiff's mental health condition." (ECF No. 1, PageID.13.)

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976). Disabled persons are not members of a protected class simply by virtue of their disability. *See City of Cleburne*, 473 U.S. at 445–46. Additionally, "prisoners are not considered a suspect class for purposes of equal protection litigation." *Jackson v. Jamrog*, 411 F.3d 615, 619 (6th Cir. 2005); *see also Wilson v. Yaklich,* 148 F.3d 596, 604 (6th Cir. 1998).

Because neither a fundamental right nor a suspect class is at issue, Plaintiff's claim is reviewed under the rational basis standard. *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby,* 470 F.3d 286, 298 (6th Cir. 2006). "Under rational basis scrutiny, government action amounts to a constitutional violation only if it 'is so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the government's actions

---

[1] To the extent that Plaintiff contends the strip search itself violated his Eighth Amendment rights, the Sixth Circuit has held that an Eighth Amendment claim is not cognizable when the plaintiff has not alleged any physical injury from the strip search. *See Jackson v. Herrington*, 393 F. App'x 348, 354 (6th Cir. 2010).

were irrational.'" *Id.* (quoting *Warren v. City of Athens,* 411 F.3d 697, 710 (6th Cir. 2005)). To prove his equal protection claim, Plaintiff must demonstrate "intentional and arbitrary discrimination" by the state; that is, he must demonstrate that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Here, although Plaintiff alleges that Defendant Green discriminated against him, Plaintiff fails to identify any other prisoners who were similarly situated, but treated differently. Instead, Plaintiff's allegations of discriminatory treatment are wholly conclusory. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.

Moreover, to the extent that Plaintiff intended to assert an equal protection claim in a class-of-one case, he fails to state such a claim. "[T]he hallmark of [a 'class-of-one'] claim is not the allegation that *one individual* was singled out, but rather, the allegation of arbitrary or malicious treatment not based on membership in a disfavored class." *Davis v. Prison Health Servs.*, 679 F.3d 433, 441 (6th Cir. 2012) (alterations in original) (citations omitted); *see Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 592 (9th Cir. 2008) ("The 'class of one' theory . . . is unusual because the plaintiff in a 'class of one' case does not allege that the defendants discriminate against a *group* with whom she shares characteristics, but rather that the defendants simply harbor animus against her *in particular* and therefore treated her arbitrarily." (emphasis in original)). A plaintiff "must overcome a 'heavy burden' to prevail based on the class-of-one theory." *Loesel v. City of Frankenmuth*, 692 F.3d 452, 462 (6th Cir. 2012) (citation omitted).

The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). "'Similarly situated' is a term of

art—a comparator . . . must be similar in 'all relevant respects.'" *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)). Even construing Plaintiff's equal protection claim as a class-of-one-claim, such a claim is entirely conclusory. Plaintiff fails to allege any facts to suggest that his fellow inmates were similar in all relevant aspects.

Thus, for the reasons set forth above, the Court will dismiss Plaintiff's Fourteenth Amendment equal protection claim against Defendant Green.

### C.     Constitutional Claims Against Defendants Trotter and Snyder

Plaintiff faults Defendant Trotter for violating his Fourth and Eighth Amendment rights by failing to supervise Defendant Green while conducting the strip search and by exhibiting "deliberate indifference . . . to the rights and safety of Plaintiff by failing to act on first-hand knowledge that unconstitutional acts were being conducted against Plaintiff." (ECF No. 1, PageID.13.) Plaintiff also alleges that Defendant Snyder violated his Eighth Amendment rights by "personally observing, and failing to act on information indicating that unconstitutional acts were being committed against Plaintiff." (*Id.*, PageID.15.) Further, Plaintiff contends that Defendant Snyder laughed when he walked through the lobby area during the search. (*Id.*, PageID.9.)

As discussed *supra*, the mere failure to act is insufficient to impose § 1983 liability. *See Grinter*, 532 F.3d at 576; *Summers*, 368 F.3d at 888; *Greene*, 310 F.3d at 899. Furthermore, to the extent a failure to intervene theory would apply to Plaintiff's claims against Defendants Trotter and Snyder, the Court has already determined that Defendant Green did not violate either the Fourth Amendment or the Eighth Amendment when conducting the strip search, and "[a] plaintiff cannot succeed on a claim for failure to intervene . . . when there is no underlying constitutional violation." *See Kayo v. Mertz*, 531 F. Supp. 3d 774, 799 (S.D.N.Y. Mar. 31, 2021) (citing *Wieder v. City of New York*, 569 F. App'x 28, 30 (3d Cir. 2014)); *see also Johnson v. City of New York*,

No. 21-cv-5268 (PKC), 2022 WL 4133284, at *6 (S.D.N.Y. Sept. 12, 2022) (dismissing plaintiff's failure to intervene in strip search claims because the underlying strip search did not violate the Constitution). Finally, although Defendant Snyder acted unprofessionally by laughing while walking through the lobby, as noted above, such verbal insults are not actionable under the Eighth Amendment. *See Ivey*, 832 F.2d at 955; *see also Roden v. Sowers*, 84 F. App'x 611, 613 (6th Cir. 2003) (dismissing inmate's claim, under the Eighth Amendment, that female officer who conducted strip search "laughed and purposefully humiliated" him). The Court, therefore, will dismiss Plaintiff's constitutional claims against Defendants Trotter and Snyder.[2]

### D.    Claims for Violations of MDOC Policy

The Court has liberally construed Plaintiff's complaint to assert claims that all Defendants violated numerous MDOC policies regarding strip searches and the processing of grievances and PREA complaints. Section 1983, however, does not provide redress for violations of state law. *See Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). The only possible way a policy might enjoy constitutional protection would be through the Fourteenth Amendment's Due Process Clause.

To demonstrate a due process violation, a plaintiff must prove the following elements: (1) a life, liberty, or property interest requiring protection under the Due Process Clause; and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). "Without a protected liberty or property interest, there can be no

---

[2] Plaintiff suggests that Resident Unit Manager Lacrosse violated his Eighth Amendment rights by "personally observing, and failing to act on first-hand knowledge that unconstitutional acts were being committed against Plaintiff." (ECF No. 1, PageID.15.) Plaintiff, however, did not name Lacrosse as a Defendant in the caption of his complaint; nor did he name Lacrosse when listing the parties. To the extent Plaintiff intended to name Lacrosse as a Defendant in this matter, his Eighth Amendment claim against Lacrosse fails for the same reasons Plaintiff's claims against Defendants Trotter and Snyder do.

federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)). Courts, however, have routinely recognized that a prisoner does not enjoy any federal protected liberty or property interest in state procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 250 (1983); *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Sweeton*, 27 F.3d at 1164. Plaintiff's allegation that Defendants violated MDOC policy and procedure, therefore, fails to raise a cognizable federal constitutional claim.

Moreover, to the extent Plaintiff seeks to invoke this Court's supplemental jurisdiction over state law claims for violations of MDOC policy, this Court declines to do so. Ordinarily, where a district court has exercised jurisdiction over a state law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state law claims. *See Experimental Holdings, Inc. v. Farris* 503 F.3d 514, 521 (6th Cir. 2007) ("Generally, once a federal court has dismissed a plaintiff's federal law claim, it should not reach state law claims." (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966))); *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld*, 994 F.2d at 1182; *see also Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) ("Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues." (internal quotations omitted)). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556

U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).

Here, the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction. Accordingly, Plaintiff's state law claims will be dismissed without prejudice.

### Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's federal claims will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's state law claims alleging violations of MDOC policy will be dismissed because the Court declines to exercise supplemental jurisdiction over them.

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated:     March 28, 2023                    /s/ Robert J. Jonker
                                              Robert J. Jonker
                                              United States District Judge